# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT RICHARDS, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-10-2639 |
| MAYOR & CITY COUNCIL OF BALTIMORE CITY, *et al.*, | * | |
| | * | |
| Defendants | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM**

Robert Richards ("Plaintiff") brings suit against the Mayor & City Council of Baltimore City ("MCC"), former Police Commissioner Edward T. Norris, former Major Zeinab Rabold of the Baltimore City Police Department, and Alvin O. Gillard, director of the Community Relations Commission of Baltimore City, (collectively "Defendants"), under 42 U.S.C.A. §§ 1983 & 2000(e), the Maryland Code, and the Baltimore City Code, alleging employment discrimination and violations of his First, Fifth, and Fourteenth Amendment rights. (Compl. 2, ECF No. 1). Defendants have moved to dismiss on the grounds of *res judicata* and untimeliness. (Def.'s Mot. Dismiss, ECF No. 3). The issues have been briefed and no oral argument is required. Local Rule 105.6. For reasons explained below, Defendants' motion is GRANTED.

### *I. Background*

The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). From 1991 to 2002, Plaintiff was an officer of the Baltimore City Police Department ("BPD"). (Compl. 5-6, ECF No. 1). In 1995, he began to publically criticize the BPD for what he alleged was disparate treatment of black

officers. *Id* at 10. Around 2001, BPD fired its only black deputy commissioner, Barry Powell. *Id* at 12. In response, Plaintiff participated in a press conference and other public events, further criticizing the Department on racial grounds. *Id.* Later that year, Defendant Edward Norris, then Commissioner of the BPD, communicated to Plaintiff that he did not want him to speak anymore on the issue. *Id.* Norris subsequently made a number of criticisms of Plaintiff regarding his job performance as Commander of the Aviation Unit. *Id* at 13. In turn, Plaintiff publically accused the BPD of failing to maintain proper safety and hiring standards in the Aviation Unit. *Id.*

The same year, Plaintiff was transferred from the Aviation Unit to the Southeast District. *Id*. Plaintiff attributes the transfer to his refusal to operate helicopters during a chemical fire caused by a train derailment in Downtown Baltimore. *Id* at 12-13. When Plaintiff learned that his commanding officer in the Southeast District would be Major Zeinab Rabold, he filed a grievance with the Baltimore Community Relations Commission ("CRC"). *Id* at 14. Plaintiff alleges that Defendant Rabold had previously been ordered to monitor his public speaking activities on behalf of the BPD and that she had testified against him in a previous disciplinary proceeding. *Id* at 10, 11. Plaintiff's request to transfer to another district was denied. *Id.*

Shortly after his transfer, Plaintiff took medical leave for various conditions. *Id* at 16. Nevertheless, during his leave, Defendant Rabold ordered Plaintiff to report for a Fitness for Duty examination on February 8, 2002. *Id*. Plaintiff's doctor informed him that he would have to reschedule the exam because of his condition. *Id* at 17. Plaintiff explained the situation to Human Resources at the BPD, and based on their conversation, he believed that the exam had been rescheduled. *Id*. When he did not report for the exam on February 8, however, Rabold charged him with insubordination, willful disobedience of a lawful order, false statement, and conduct reflecting poorly on the Department. *Id*.

Six months later, in July of 2002, Plaintiff received notice that the BPD would be convening a trial board to consider his termination. *Id.* The trial board found Plaintiff guilty of the charges, and recommended a demotion and 50 days' suspension without pay. *Id* at 18. Defendant Norris, however, rejected the board's recommendation and terminated Plaintiff. *Id.*

Plaintiff then amended his complaint to the CRC to include allegations of discrimination and retaliation regarding the Fitness for Duty exam and his termination. (Pl.'s Mem. 3, ECF No. 4-1). In 2004, after reviewing the complaint, the CRC determined that the allegations were supported by probable cause. *Id*. After failing to reach an agreement with the BPD to remedy the alleged discriminatory practices, the CRC informed Plaintiff that it would hold a public administrative hearing on the matter, as required by the Baltimore City Code. *Id*.

In 2005, Plaintiff filed a lawsuit in the Circuit Court for Baltimore City against the MCC, Norris, Rabold, and others, based on the preceding facts and alleging violations of state and local law. (Compl. 20, ECF No. 1). The Court dismissed the suit with prejudice in 2007, because Plaintiff failed to give proper notice as required by state law. *Id*.

Shortly after Plaintiff's case was dismissed, he began to send regular letters to the CRC requesting that they finally schedule the hearing to which he believed he was entitled. (Pl.'s Mem. 7, ECF No. 4-1). In 2008, the CRC wrote to Plaintiff, announcing that the hearing would be further postponed while CRC's counsel considered the merits of a challenge to its legality presented by the BPD. *Id.* Plaintiff continued his demands, but in March of 2010, the CRC finally announced that it had reached a decision, on advice of counsel, not to hold a hearing. *Id* at 8.

Plaintiff renews his claims against Defendants in this court, now alleging violations of his constitutional rights as well as state and local law. (Compl. ECF No. 1). He also adds claims

against the Director of the CRC, Alvin Gillard, for denying him a public hearing, which he contends is a violation of the Baltimore City Code and a deprivation of due process of law. (Pl.'s Mem. 8, 10, ECF No. 4-1).

## II. *Standard of Review*

Federal Rule of Civil Procedure 8(a) requires a plaintiff to submit a "short and plain statement of the claim showing that the pleader is entitled to relief," and a "short and plain statement of the grounds for the court's jurisdiction." In determining the complaint's sufficiency, the reviewing court must view all well-pled allegations as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). But, if the plaintiff fails to allege enough facts to make the claim appear "plausible on its face," or if the court determines that it does not have subject-matter jurisdiction, then it must dismiss the complaint. *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007); *Arbaugh v. Y&H*, 546 U.S. 500, 514 (2006).

## III. *Analysis*

Defendants argue that Plaintiff's claim should be dismissed because the Circuit Court for Baltimore City dismissed an earlier suit by Plaintiff based on the same facts. (Def.'s Mot. Dismiss, ECF No. 3). The Full Faith and Credit Clause of the U.S. Constitution, implemented by 28 U.S.C. § 1738, "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction,* 456 U.S. 461, 466 (1982). Since the decision at issue here was rendered by a Maryland court, this Court must look to the law of Maryland to determine whether Plaintiff's claims may proceed. *See Kutzik v. Young*, 730 F.2d 149, 151 (4th Cir. 1984).

Under Maryland law, a claim is *res judicata* when: (1) there has been a final judgment on the merits in previous litigation (2) of the same cause of action (3) between the same parties or their privies. *Id* (citing *Alvey v. Alvey,* 171 A.2d 92, 94 (1961)). The first prong of the test is satisfied here because the Circuit Court dismissed Plaintiff's case with prejudice. *See John Crane v. Puller*, 899 A.2d 879 (Md. Ct. Spec. App. 2006) (explaining that dismissal with prejudice constitutes final adjudication on the merits for purposes of *res judicata*). The second and third prongs are satisfied as to defendants MCC, Norris, and Rabold, because they were all named defendants in the earlier suit, and because Plaintiff has alleged precisely the same facts against them in both cases. (Cir. Ct. Compl., attach. 2, ECF No. 3); *see Kutzik*, 730 F.3d at 152 (citing *Mettee v. Boone,* 251 Md. 332, 341 (1968)) ("two suits constitute the same cause of action if they rely on the same facts, even though the legal theories on which recovery is based or the remedies sought are different."). Therefore, all of plaintiff's claims against these defendants are *res judicata* and barred.

Defendant Gillard, however, was not a defendant in the earlier suit, and Plaintiff argues that he has alleged new facts regarding Gillard. (Pl.'s Mem. 8-9, ECF No. 4-1). But, the only fact Plaintiff identifies in his complaint that could possibly be the basis of a claim against Gillard is that the CRC refused to grant Plaintiff a public hearing on his grievance. (*compare* Compl. ECF No. 1). Plaintiff makes no attempt in the complaint to tie this fact to any theory of recovery; and, it is not obvious to the Court what, if any, relevance this fact has in light of Plaintiff's proclamation that the suit is "an action... to remedy harm from a course of invidious discriminatory conduct on the part of the Defendants which culminated in a disciplinary process known as the 'Trial Board' hearing." (Compl. 2, ECF No. 1). The trial board hearing occurred eight years before the CRC refused Plaintiff's request for a hearing. Plaintiff certainly has pled

5

no facts that indicate discriminatory conduct by Gillard. The Court assumes, then, that Plaintiff means to claim that the CRC's refusal to hold the hearing is a violation of the Baltimore City Code, and that it deprived him of due process, as he argues in his Response to Defendants' Motion To Dismiss. (Pl.'s Mem. 8, 10, ECF No. 4-1). So construed, the claim is not *res judicata*; since the CRC did not make its final decision until March of 2010, Plaintiff clearly could not have raised the issue in litigation that took place in 2005.[1]

Further confusing the issue, however, is the fact that Plaintiff has completely failed to identify a basis for this Court's jurisdiction. Instead, his purported statement of jurisdiction contains a list of laws that he claims Defendants violated, which include state and municipal codes and regulations, as well as federal statutes. (Compl. 5, ECF No. 1). Plaintiff does not identify where he is domiciled, so the Court is left to speculate as to whether Plaintiff is invoking diversity jurisdiction to support his state law claims, or whether he means to invoke federal question jurisdiction over his federal claims and then tie on his state law claims under supplemental jurisdiction. *See* 28 U.S.C.A. §§ 1331, 1332, & 1367 (West 2010). The difference is material, because Plaintiff appears to be making both state and federal law claims against Gillard.

To proceed on the state law question, Plaintiff would have to either establish diversity, or else establish a federal claim arising from the same set of facts, to which the state law claim would be supplemental. *See Gray v. Petoseed*, 129 F.3d 1259 (Table) (4th Cir. 1997) (explaining that the burden of establishing diversity lies with the party invoking federal jurisdiction); *see also* 28 U.S.C.A. §1367; *Hardin v. Belmont Textile Machinery*, 355 F.App'x

---

[1] Defendants state in their Motion To Dismiss that Plaintiff's factual allegation regarding the CRC are identical in both complaints. That is not the case. While they are *nearly* identical, in the present complaint Plaintiff does add the single critical fact that the CRC issued a final decision regarding his hearing. (Compl. 21, ECF No. 1).

717 (4th Cir. 2009) ("Federal courts may have supplemental jurisdiction over a state cause of action if both the state and federal claims arise from the same transaction or occurrence.").

Plaintiff has failed to establish diversity, so the state claim may only proceed under supplemental jurisdiction. Therefore, the Court must first consider the adequacy of the due process claim, in order to establish the requisite federal question jurisdiction to which supplemental jurisdiction might attach. In his memorandum opposing Defendants' Motion To Dismiss, Plaintiff claims that the denial of the hearing deprived him of "important and substantive procedural due process rights." (Pl.'s Mem. 10, ECF No. 4-1). Plaintiff is perhaps unaware that substantive due process and procedural due process are distinct bodies of law, but the Court understands Plaintiff to be referring to procedural due process, as the bulk of his case revolves around his termination from public employment, in which he has a cognizable property interest.[2] *See Arnett v. Kennedy*, 416 U.S. 134, 227 (1974). Even so, Plaintiff has failed to state a due process claim.

The Due Process Clause of the Fourteenth Amendment protects against government deprivations of life, liberty, and property. U.S. CONST. amend. XIV § 1. So, to make out a due process claim, Plaintiff must first identify such a deprivation. *See Ingraham v. Wright* 430 U.S. 651, 672 (1977). Here, the only plausible, constitutionally protected interest Plaintiff has at stake is his property interest in public employment. Therefore, Plaintiff must show that Gillard somehow participated in or was responsible for his termination, and that the termination lacked adequate process.

While Plaintiff makes a bald assertion that he was deprived of due process by the CRC, he pleads no facts showing how the CRC was involved in his termination. Further, even if he

---

[2] And, it would of course be quite extraordinary to argue that a hearing before the Baltimore Community Relations Commission is a fundamental right, "deeply rooted in this Nation's history and tradition." *See Washington v. Glucksberg,* 521 U.S. 702, 721 (1997).

7

could show such involvement, Plaintiff has not alleged any facts indicating that the hearing the CRC refused to give him is the kind of fundamental process required by the Constitution. Indeed, constitutional due process is satisfied where a public employee receives notice and an opportunity to respond to charges before his termination. *Gray v. Laws*, 51 F.3d 426 (4th Cir. 1995) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985)); *see also Garraghty v. Virginia Retirement System*, 200 F.App'x 209, 212 (4th Cir. 2006). Nothing in Plaintiff's Complaint shows that he lacked notice or an opportunity to respond prior to being terminated from the BPD, or that a hearing before the CRC is in any way connected to those requirements. Indeed, he describes the process he received at the BPD as a "full and final hearing." (Compl. 18, ECF No. 1). In addition to that hearing, Plaintiff also received judicial review in state court. This is all the process to which Plaintiff is entitled under the Constitution. *See Loudermill*, 470 U.S. at 546. While Plaintiff contends that that process was defective due to the biases of the decision-makers involved, that claim, whatever its merits, has been litigated in the Circuit Court and is now barred from further review. *See supra*. The only question before this Court is whether the Constitution entitles plaintiff to a hearing before the CRC. It plainly does not.[3] Because Plaintiff has alleged no facts that could plausibly be construed as a deprivation of due process, even in the light most favorable to him, he has failed to state a claim on which this Court can grant relief. *See Twombly*, 550 U.S. at 555.

Because Plaintiff's only federal claim is meritless, the Court lacks jurisdiction to consider Plaintiff's state law claim. While courts ordinarily enjoy discretion to retain pendant jurisdiction over state law claims after federal claims have been dismissed, that discretion is removed where

---

[3] It is also irrelevant to the due process inquiry that a hearing may be required by local law. Due process is not measured by state-created procedures, even when they exceed what is required by the Constitution. *Riccio v. County of Fairfax,* 907 F.2d 1459, 1469 (4th Cir.1990). Due process is measured by the Constitution itself, according to the standard articulated above. *See Loudermill,* 470 U.S. at 541.

the federal claims are insubstantial, obviously meritless, or a pretext to obtain federal consideration of state law issues. *See Garraghty*, 200 F.App'x at 212. Such is the case here. Plaintiff has made no genuine effort to tie Gillard's actions to the process to which he is entitled under the Constitution, but instead appears to seek enforcement of rights granted him under the Baltimore City Code. This Court is without subject matter jurisdiction to adjudicate those rights, and the claim must therefore be dismissed.[4] *See id.*

### *IV. Conclusion*

The Court concludes that Plaintiff's claims against the MCC, Norris, and Rabold are *res judicata*, and that Plaintiff has failed to state a claim against Gillard. Accordingly, Defendants' Motion To Dismiss (ECF No. 3) is GRANTED.

Dated: February 4, 2011
/s/
James K. Bredar
United States District Judge

---

[4] The Court hastens to note, however, that the same section of the Baltimore City Code that Plaintiff relies on in this case also entitles him to judicial review of final CRC decisions in the Baltimore Circuit Court. BALTIMORE, MD., CITY CODE, ART. 4, § 4-4(a). (ECF No. 4-6).